UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN JOAQUIN GENERAL HOSPITAL, a department of the County of San Joaquin, a political division of the State of California,<br><br>Plaintiff,<br><br>v.<br><br>HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company, an Illinois licensed insurance company, doing business as Blue Cross Blue Shield of Texas, and Does 1 through 25, inclusive,<br><br>Defendant. | No. 2:20-cv-01582-MCE-CKD<br><br>**MEMORANDUM AND ORDER** |

Through the present action, Plaintiff San Joaquin General Hospital ("Plaintiff") asserts three causes of action against Defendant Health Care Service Corporation, a Mutual Legal Reserve Company, an Illinois licensed insurance company, doing business as Blue Cross Blue Shield of Texas, and Does 1 through 25, inclusive ("Defendant"). Specifically, Plaintiff asserts causes of action for: (1) breach of implied-in-fact contract pursuant to California Health and Safety Code § 1371.4 (herein "Section 1371.4"); (2) breach of implied-in-fact contract and oral contract under the common law; and

1

(3) recovery under a *quantum meruit* theory.  Presently before the Court is Defendant's Motion to Dismiss for failure to state a claim.  ECF No. 5.[1]  For the reasons set forth below, the Motion to Dismiss is DENIED in part and GRANTED in part with leave to amend.[2]

## BACKGROUND[3]

Plaintiff alleges that beginning on or about June 13, 2019, Defendant failed to properly pay Plaintiff for emergency, "medically necessary" services rendered to Patients A.V.B. and S.M (the "Patients").[4]  ECF No. 10 at 2.  Plaintiff contacted Defendant to ascertain whether Defendant was responsible for the costs associated with the medically necessary services rendered to the Patients.  In response, Defendant's agent verified to Plaintiff the relevant insurance verification and insurance coverage eligibility information under Defendant's health plan.  Plaintiff then proceeded to render said medical services to the Patients.  Plaintiff timely billed Defendant for its usual and customary charges for the medical services rendered to the Patients, totaling $296,145.64.  However, Defendant failed to properly pay Plaintiff for the amount billed, paying only $131,439.41 of the total cost.

///

///

///

---

[1] For purposes of edification, the Court pauses to observe that Defendant's bright blue headings not only violate the Local Rules of this district, but they also proved diversion of the eye and proved distracting to its arguments.

[2] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs.  ECF No. 7; see E.D. Cal. Local Rule 230(g).

[3] Unless otherwise indicated, the facts set forth in this section are taken, at times verbatim, from the allegations contained in Plaintiff's Complaint.  ECF No. 1.

[4] Since Plaintiff withdraws its claims as to Patients H.H. and B.S., see ECF No. 10 at 2, the Motion is GRANTED with leave to amend.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)[5], all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief."  Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing Wright & Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . . have not nudged their

---

[5] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

1  claims across the line from conceivable to plausible, their complaint must be dismissed."
2  Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge
3  that actual proof of those facts is improbable, and 'that a recovery is very remote and
4  unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss to a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

### A.   Section 1371.4

This Court finds that Section 1371.4 is inapplicable to this case. Section 1371.4, which is part of the Knox–Keene Health Care Service Plan Act of 1975, applies exclusively to Department of Managed Health Care ("DMHC") licensed health plans. Section 1371.4, thus, applies only to health care service plans and specialized health

///

4

care service plan contracts, and not to self-funded plans or health insurance policies. See Scripps Clinic v. Superior Court, 108 Cal. App. 4th 917, 938, n.5 (2003).

Defendant is an out-of-state entity that is not regulated by DMHC. ECF No. 5-1 at 6. And, as Defendant's Reply correctly points out, Plaintiff concedes that Defendant "merely administers the plans [and] does not issue them." ECF No. 11 at 4-5. Defendant, therefore, is not within the definition of "health care service plan," thus constituting a self-funded plan. As a self-funded plan (see generally Plan Document, Ex. 1 to Deft's Mot., ECF No. 5-4), it appears Section 1371.4 does not even extend to this case in the first place. Consequently, Plaintiff's attempt to rely on Section 1371.4 to create a cause of action fails. Accordingly, Defendant's Motion to Dismiss with respect to the first cause of action to the Complaint is GRANTED with leave to amend.

**B.     Breach of Implied-In-Fact and Oral Contracts Claims**

Under California law, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011). Defendant challenges only whether an enforceable contract exists. See generally ECF No. 5-1.

A contract is "an agreement to do or not to do a certain thing," and can only exist if the parties are: (1) capable of contracting, (2) they manifest objective consent, (3) the contract has a lawful object, and (4) there is sufficient consideration. Cal. Civ. Code §§ 1549–1550. An enforceable contract may be written or oral. See Cal. Civ. Code § 1622; see also Simmons v. Ghaderi, 44 Cal. 4th 570 (2008). An implied-in-fact contract is also enforceable, and "differs from an express contract only in that the promise is not expressed in language but implied from the promisor's conduct." Rokos v. Peck, 182 Cal. App. 3d 604, 614 (1986) (quoting Stanley v. Columbia Broad. Sys., 35 Cal. 2d 653, 674 (1950)).

To determine mutual consent, the Court uses an objective standard that is applied to the conduct of the parties (i.e., the reasonable meaning of their expressed words and

acts).[6] Additionally, to be enforceable, the contract terms must be sufficiently definite "for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached." Ersa Grae Corp. v. Fluor Corp., 1 Cal. App. 4th 613, 623 (1991). "[T]he omission of an essential term in a contract, such as price, does not vitiate contract formation if the parties otherwise manifested their mutual assent to the agreement and the terms of that agreement are sufficiently definite," thus permitting the court to fill in gaps. ATACS Corp. v. Trans World Commc'ns, Inc., 155 F.3d 659, 667 (3d Cir. 1998) (citations omitted); see also Goichman v. Rheuban Motors, Inc., 682 F.2d 1320, 1325 (9th Cir. 1982); Restatement (Second) of Contracts § 204 (1981) ("When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court.").

Here, Plaintiff pled that it contacted Defendant to verify the Patients' coverage under the health plan and to obtain authorization to provide emergency, "medically necessary" services. See generally ECF No. 1. In response, Defendant confirmed the Patients' coverage and authorized their care. Id. The facts alleged are sufficiently definite to plead the formation of an oral contract and an implied-in-fact contract, and thus survives a motion to dismiss.

Defendant relies on Orthopedic Specialists of S. Cal. v. Cal. Pub. Emps. Ret., where an out-of-network provider, Orthopedic Specialists of Southern California ("OSSC"), "provided nonemergency medical services to a member of" Public Employees' Retirement System ("CalPERS"). 228 Cal. App. 4th 644, 646 (2014). CalPERS orally authorized treatment, informing OSSC that "the member was 'insured, covered, and

---

[6] "Where the existence of a contract is at issue and the evidence is conflicting or admits of more than one inference, it is for the trier of fact to determine whether the contract actually existed. But if the material facts are certain or undisputed, the existence of a contract is a question for the court to decide." San Joaquin General Hosp. v. United Healthcare Ins., No. 2:16-cv-01904-KJM-EFB, 2017 WL 1093835, *2 (E.D. Cal. Mar. 23, 2017) (citing Bustamante v. Intuit, Inc., 141 Cal. App. 4th 199, 208 (2006) (citations and quotations omitted).

eligible.'" Id. CalPers then remitted a portion of the total treatment cost to OSSC. Id. OSSC then filed suit under a breach of contract theory. Id. This case is distinguishable from the case at bar for several legal and factual reasons.

First, the Orthopedic Specialists of S. Cal. court never reached the breach of contract issue because "an oral promise cannot be enforced against a government agency."[7] Id. at 649. Moreover, OSSC did not bill for usual and customary charges, id., contrary to the charges Plaintiff alleges here. Cf. ECF No. 1-1, ¶ 12. Finally, and most importantly, the Orthopedic Specialists of S. Cal. court afforded ample discussion distinguishing non-emergency and emergency medical services, where the latter "must treat all patients seeking emergency care." 228 Cal. App. 4th at 649. In other words, in treating nonemergency patients, OSSC was "free to pick and choose its patients and focus on those with the greatest ability to pay its charges," while physicians providing emergency care "have none of these advantages," and thus receive greater protections in seeking recourse. See 228 Cal. App. 4th at 649. In contrast, Plaintiff here alleges costs for emergency, "medically necessary" treatment, where Plaintiff lacked discretion to pick and choose the Patients to treat. See generally ECF No. 1-1.

Defendant then relies on Pac. Bay Recovery, Inc. v. California Physicians' Services, Inc.,12 Cal. App. 5th 200 (2017). Like Orthopedic Specialists of S. Cal., Pacific Bay is distinct from the case at bar because that subscriber did not receive emergency, "medically necessary" treatment. See Pacific Bay Recovery, Inc., 12 Cal. App. 5th at 203 ("Nowhere in the FAC does Pacific Bay allege that the subject subscriber requested treatment for an emergency medical condition."); cf. generally, ECF No. 1-1.

In fact, the Pacific Bay court premised its entire analysis on this non-emergency medical services distinction. See generally Pac. Bay Recovery, Inc., 12 Cal. App. 5th 200. The court aptly explained the difference: "[T]he exigent circumstances facing a

---

[7] Though the Orthopedic Specialists of S. Cal. court notes that it "disagree[s] that an oral promise was created under the circumstances," it declines to offer any further reasoning, id., and thus is not instructive here.

1 patient in need of emergency services helps explain why emergency care providers must
2 provide emergency services without first questioning the patient's ability to pay." Id. at
3 209. In contrast, "as an out-of-network, nonemergency service provider, Pacific Bay was
4 entitled to payment for treating Blue Shield's subscriber under the terms of the
5 applicable" governing contract alone. Id. at 216-17 (emphasis added).

6       Moreover, because at the motion to dismiss stage all material facts alleged must
7 be taken as true, see Cahill v. Liberty Mut. Ins. Co., 80 F.3d at 337-38, this Court agrees
8 with Plaintiff that it is improper at this time to determine when emergency services
9 ended, and non-emergency services began. ECF No. 10 at 19. Therefore, the cases in
10 which Defendant relies are not instructive.

11       Indeed, as Plaintiff correctly argues in its Opposition, it is the parties' alleged
12 conduct considering the circumstances — in this case emergency medical care — that
13 gave rise to a meeting of the minds. See ECF No. 10 at 18-20; see also Grosso v.
14 MiraMax Film Corp., 383 F.3d 965, 967 (9th Cir. 2004) (citing Desny v. Wilder,
15 46 Cal. 2d 715, 735-36 (1956)). Plaintiff, by alleging the verbal authorization to render
16 emergency medical services, sufficiently pled a meeting of the minds to enter into a valid
17 contract. See generally ECF No. 1-1.

18       Additionally, after these conversations, Plaintiff contends it billed Defendant for its
19 services, to which Defendant partially paid for those services. Id., ¶¶ 12-15.
20 Defendant's partial performance indicates the formation of a contract sufficient to survive
21 a motion to dismiss. See, e.g., Dedicato Treatment Ctr., Inc. v. Cigna Health & Life Ins.
22 Co., No. 17CV04805BROJCX, 2017 WL 8116314, at *4 (C.D. Cal. Aug. 24, 2917).
23 Accordingly, Defendant's Motion to Dismiss Plaintiff's claims for breach of oral contract
24 and implied-in-fact contract is DENIED.

25     **C.**    ***Quantum Meruit* Claim**

26       Defendant next asserts Plaintiff pled insufficient facts to state a *quantum meruit*
27 claim because Plaintiff has not pled that its services were performed for Defendant's
28 benefit, nor that Defendant requested Plaintiff's services. ECF No. 5-1, at 11-13.

"Quantum meruit. . . is an equitable remedy implied by the law under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." In re De Laurentiis Entm't Grp. Inc., 963 F.2d 1269, 1272 (9th Cir. 1992) (citations omitted); accord George v. Double-D Foods, Inc., 155 Cal. App. 3d 36, 46-47 (1984). "*Quantum meruit* is based not on the intention of the parties, but rather on the provision and receipt of benefits and the injustice that would result to the party providing those benefits absent compensation." In re De Laurentiis Entm't Grp. Inc., 963 F.2d at 1272 (emphasis omitted).

*Quantum meruit* requires: "(1) that the plaintiff performed certain services for the defendant; (2) their reasonable value; (3) that they were rendered at defendant's request; and (4) that they are unpaid." Cedars Sinai Med. Ctr. v. Mid-W. Nat. Life Ins. Co., 118 F. Supp. 2d 1002, 1013 (C.D. Cal. 2000) (citing Haggerty v. Warner, 115 Cal. App. 2d 468, 475 (1953)). "To recover on a claim for the reasonable value of services under a *quantum meruit* theory, a plaintiff must establish both that [it] was acting pursuant to either an express or implied request for services from the defendant and that the services rendered were intended to and did benefit the defendant." Ochs v. PacifiCare of California, 115 Cal. App. 4th 782, 794 (2004).

Here, it is plausible that Defendant implicitly requested Plaintiff's services when it verbally authorized the Patients' care and rendered partial payment. See San Joaquin General Hosp., 2017 WL 1093835, at *3 (citing Ristau v. Madhvani, 1991 WL 283666, at *3 (D.D.C. Dec. 20, 1991) (finding partial payment to be evidence that parties entered into an agreement)); Doctors Medical Center of Modestory v. Global Excel Management, Inc., 2009 WL 2500546, at *6 (E.D. Cal. Aug. 14, 2009). Plaintiff's factual allegations, including the verbal authorizations, industry customs, and at least partial performance by both parties, are adequate to indicate that the terms of the contract are reasonably certain or may be reasonably ascertained by a fact finder. See Weddington Prods., Inc. v. Flick, 60 Cal. App. 4th 793, 811 (1998).

Plaintiff further alleges it rendered services benefitting the Patients with Defendant's healthcare policy, thus benefitting Defendant. ECF No. 10 at 20-22. Although Defendant argues that it received no benefit and was in fact harmed by its customers going out-of-network, this argument raises a dispute of fact. On its face, the Patients plausibly received a benefit from the services rendered by the Plaintiff. It is also reasonable to infer that, because Defendant would no longer have to pay for the Patients to receive the same services elsewhere, Defendant benefited from Plaintiff's services.

Therefore, because Plaintiff's allegations regarding its performance and Defendant's partial performance are sufficiently plausible, Plaintiff's *quantum meruit* claim survives Rule 12(b)(6). Accordingly, Defendant's Motion to Dismiss Plaintiff's *quantum meruit* cause of action is DENIED.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss, ECF No. 5, is GRANTED in part with leave to amend Plaintiff's Section 1371.4 claim and DENIED in part regarding Plaintiff's breach of oral contract and implied-in-fact contract common law claims and *quantum meruit* claim.

IT IS SO ORDERED.

Dated: September 3, 2021

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE